**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAKE GALLOWAY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>E MORTGAGE CAPITAL, INC.<br><br>Defendant. | Case No. 25-cv-7205-NIQA |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL RESPONSES TO INTERROGATORY NO. 16 AND REQUEST FOR PRODUCTION NO. 5**

# INTRODUCTION

EMC's Opposition rests on a false premise: Plaintiff is not seeking the names, addresses or contact information of putative class members. He seeks complaints about the same type of allegedly unlawful telemarketing at issue here, EMC's responses to those complaints, and related nonprivileged internal communications. Those materials bear directly on damages in a TCPA damages, whether Plaintiff's experience was truly an "isolated" wrong-number event, EMC's principal defense in this case, and whether EMC's affirmative defenses concerning typicality and common proof have any factual basis.

EMC's position also disregards the procedural posture of this case. The Court has not bifurcated individual and class discovery. It instead directed the parties to complete discovery and established a single deadline for all fact discovery, which has now been extended to December 21, 2026. ECF Nos. 11, 13, 20. Plaintiff therefore must obtain during this discovery period the evidence necessary to establish the requirements of Rule 23. *Frey v. Frontier Utilities Northeast LLC*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620, at *5–6 (E.D. Pa. Apr. 13, 2020), rejected the same attempt to withhold class discovery before certification where discovery had not been bifurcated.

EMC does not meaningfully address these considerations. It instead speculates that responsive materials may contain privileged or private information. But the existence and substance of prior complaints are not privileged, and Plaintiff does not seek complainants' personal identifying information. EMC may redact Social Security numbers, financial information or any other substantial private material that their opposition speculates on. Any remaining confidentiality concern can be addressed through an appropriate protective order.

Nor does the Gramm-Leach-Bliley Act prohibit production. It expressly permits disclosure made "to respond to judicial process." 15 U.S.C. § 6802(e)(8). Finally, EMC offers no declaration, estimate of cost or employee time, description of the systems or custodians that would need to be searched, or approximation of the volume of responsive material. Its unsupported objections do not justify withholding every responsive document.

## ARGUMENT

### I. EMC MISCHARACTERIZES THE DISCOVERY PLAINTIFF SEEKS

EMC's principal contention is that Plaintiff seeks the personal information of putative class members to investigate or "recruit" additional claimants. Opp. at 2–5. Neither request seeks that information.

Interrogatory No. 16 asks EMC to identify litigation, arbitrations, and pre-suit complaints alleging TCPA or telemarketing violations during the Relevant Time Period. Request for Production No. 5 seeks complaints and do-not-call requests concerning allegedly unlawful or unauthorized outbound calls, along with EMC's responses and related internal communications. These requests seek evidence concerning EMC's knowledge, conduct, response, and compliance practices. They do not request a list of consumers' names, addresses, etc.

EMC may redact complainants' names, Social Security numbers, financial information, and other personal identifying information. Such redactions would leave intact the relevant information: the date and substance of each complaint; the nature of the challenged communication; whether it involved a wrong number, lack of consent, prerecorded message, National Do Not Call Registry violation, or do-not-call request; which EMC employee, vendor, system, or campaign was implicated; and how EMC investigated and responded.

EMC's reliance on *Deibler v. SanMedica International, LLC*, No. 19-20155, 2021 U.S. Dist. LEXIS 247974, at *29 (D.N.J. Dec. 30, 2021), is therefore misplaced. As EMC describes it, *Deibler* concerned the disclosure of putative class members' names and identities. Opp. at 3. Plaintiff seeks neither here. Nor does *Deibler* establish that evidence relating to other consumers becomes undiscoverable merely because it also bears on the requirements of Rule 23.

Indeed, this Court's decision in *Frey* rejects the premise underlying EMC's Opposition. *Frey* was a TCPA class action in which the plaintiff sought unredacted outbound calling records before class certification. 2020 U.S. Dist. LEXIS 260620, at *5–6. The Court compelled production because the records were relevant to both class certification and the merits. *Id.* The Court further recognized that discovery had not been bifurcated and that the plaintiff therefore was required to pursue discovery concerning both his individual and class claims during the same discovery period. *Id.*

The same is true here. The Court has not bifurcated discovery or deferred class discovery until after certification. ECF Nos. 11, 13, 20. Plaintiff bears the burden of establishing numerosity, commonality, typicality, predominance, and ascertainability. EMC cannot insist that Plaintiff prove those requirements while withholding evidence showing whether other consumers reported materially similar conduct.

EMC itself contends that the communications to Plaintiff were "isolated, inadvertent, and the result of a wrong-number contact." ECF No. 18-1. It also asserts that Plaintiff is atypical, that common issues do not predominate, and that no centralized proof exists. ECF No. 10 at 8–10. Similar complaints may confirm or disprove those contentions. EMC cannot place the absence of a broader pattern at issue while preventing Plaintiff from discovering whether that pattern exists.

## II. THE COMPLAINTS ARE RELEVANT TO THE MERITS, DAMAGES, AND DEFENSES EMC HAS PUT AT ISSUE

EMC attempts to reduce this dispute to whether the identities of other complainants are necessary to prove Plaintiff's individual TCPA claims. Opp. at 3–5. That framing ignores the multiple independent reasons the requested information is relevant.

First, the materials bear on notice and willfulness. The TCPA authorizes enhanced damages when a defendant's violation is knowing or willful. 47 U.S.C. §§ 227(b)(3), (c)(5). Prior complaints may show that EMC knew its calling practices, data sources or compliance procedures were producing unauthorized or wrong-number calls and nevertheless continued the same practices. In *Krakauer v. Dish Network, L.L.C.*, the Fourth Circuit affirmed an enhanced TCPA award based in part on the defendant's knowledge of its vendor's conduct, prior lawsuits and enforcement actions, and deficient responses to consumer complaints. 925 F.3d 643, 662–63 (4th Cir. 2019). The requested evidence therefore may bear directly on the appropriate measure of statutory damages, regardless of whether the complainants' identities are disclosed.

Second, the materials bear on EMC's assertion that the communications to Plaintiff were isolated and inadvertent. Complaints reporting materially similar wrong-number or unauthorized calls may show a recurring problem involving EMC's data, calling systems, campaigns, or compliance procedures.

Third, the materials bear on EMC's affirmative defenses concerning typicality, predominance, the absence of common proof, and third-party responsibility. ECF No. 10 at 8–10. Complaints concerning the same vendor, system, campaign, or calling practice may demonstrate that Plaintiff's experience arose from a common course of conduct susceptible to common proof. Complaints involving EMC's vendors may also show which vendors were involved, whether EMC knew of similar conduct, and how EMC monitored or responded to those vendors.

Courts accordingly compel production of consumer complaints in TCPA cases because they bear on the merits, class certification, and willfulness. See *Meredith v. United Collection Bureau, Inc.*, No. 1:16-cv-01102, 2016 U.S. Dist. LEXIS 156214, at *18–19 (N.D. Ohio Nov. 10, 2016); *O'Shea v. American Solar Solution, Inc.*, No. 14-cv-00894, 2016 U.S. Dist. LEXIS 23420, at *19–20 (S.D. Cal. Feb. 18, 2016); *Mey v. Enterprise Financial Group, Inc.*, No. 6:15-cv-00182, 2016 U.S. Dist. LEXIS 188389, at *22–23 (M.D. Fla. July 27, 2016); *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500, 505 (N.D. Ill. 2009).

Most significantly, *Hoy v. Medicare Health Advisors LLC* compelled production in response to materially identical request language. No. 4:25-cv-00207-RGE-HCA, 2026 U.S. Dist. LEXIS 142853, at *2–5 (S.D. Iowa Feb. 17, 2026). The Court ordered production of governmental complaints, demand letters, lawsuits, direct consumer complaints, written responses, related nonprivileged internal communications, and the defendant's internal do-not-call list. *Id.* at *5.

EMC attempts to distinguish *Hoy* by observing that the decision did not announce a "blanket rule" requiring production of every prior complaint. Opp. at 3. Plaintiff relies on no such rule. *Hoy* is persuasive because it addressed materially identical language, rejected the same relevance, proportionality, and burden objections, and ordered production subject to reasonable limitations. EMC never explains why the materials compelled in *Hoy* would be relevant there but categorically undiscoverable here.

The Court should also reject EMC's effort to conflate merits and class discovery. "Discovery of call lists and related information is generally relevant in TCPA class litigation." *Jackson v. Aragon Advertising, LLC*, No. 4:22-cv-00215, 2023 U.S. Dist. LEXIS 201988, at *4 (E.D. Tex. Nov. 9, 2023). That information does not become irrelevant merely because it may bear

on the existence and characteristics of the proposed class in addition to Plaintiff's individual claims.

## III. EMC's Pre-Certification Argument Is Inconsistent With the Court's Single Discovery Schedule

EMC repeatedly argues that the requested materials should not be produced because no class has yet been certified. Opp. at 2–5. But this Court has never bifurcated individual and class discovery. The Court directed the parties to "complete discovery" and established a single deadline for all fact discovery, which has now been extended to December 21, 2026. ECF Nos. 11, 13, 20.

EMC's argument produces an impossible sequence. Plaintiff bears the burden of proving the Rule 23 requirements. Yet, according to EMC, Plaintiff cannot obtain evidence concerning similar experiences, common conduct, or centralized proof until after he has already obtained certification. *Frey* rejected that circular result because a plaintiff cannot wait until after class certification to obtain the evidence necessary to seek certification. 2020 U.S. Dist. LEXIS 260620, at *5–6.

The Third Circuit has likewise recognized in TCPA litigation that matters concerning putative class members' relationships with defendants and the existence or absence of consent may require discovery before certification. *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 93–94 (3d Cir. 2011), vacated on other grounds, 567 U.S. 1001 (2012). Evidence showing whether EMC received similar complaints, whether those complaints involved the same vendors or practices, and how EMC responded is part of the discovery necessary to evaluate those issues.

Plaintiff seeks to determine whether EMC's purportedly isolated mistake was in fact isolated, whether common evidence exists, whether EMC's conduct was knowing or willful, and whether its affirmative defenses are supported.

## IV. Privacy Concerns Can Be Addressed Through Redactions and a Protective Order

EMC argues that producing responsive materials would invade nonparty privacy and potentially violate the Gramm-Leach-Bliley Act. Opp. at 4–6. Neither proposition justifies wholesale nonproduction.

Plaintiff does not dispute that nonparties have legitimate privacy interests. But those interests can be protected without withholding every complaint and every related communication. Plaintiff does not seek complainants' names, addresses, account information, etc. EMC may redact that information before production. If EMC believes additional protection is warranted, the materials may be designated confidential under an agreed or a protective order.

EMC's reliance on *Morrison v. Philadelphia Housing Authority*, 203 F.R.D. 195 (E.D. Pa. 2001), affirmatively supports production subject to confidentiality protections. There, the defendant objected to producing nonparties' personnel and disciplinary records because they contained confidential and potentially derogatory information, including allegations determined to be unfounded. *Id.* at 197. Although the Court agreed that the confidentiality concern was "well placed," it held that "[t]he appropriate means for protecting the confidentiality of such information . . . is a protective order," and compelled production subject to an agreement limiting the information's use to the litigation and requiring its return or destruction afterward. *Id.* The same approach is appropriate here.

EMC's reliance on the Gramm-Leach-Bliley Act is also misplaced. EMC cites 15 U.S.C. § 6801 for the general proposition that financial institutions must protect nonpublic personal information. Opp. at 5. But EMC omits the Act's express exception authorizing disclosure:

> to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory

> investigation or subpoena or summons by Federal, State, or local authorities; or **to respond to judicial process**.

15 U.S.C. § 6802(e)(8) (emphasis added); *see also* 12 C.F.R. § 1016.15(a)(7)(ii).

The GLBA therefore does not create a discovery privilege or prohibit EMC from producing responsive materials pursuant to the Federal Rules or a Court Order. The courts that have directly considered the issue uniformly recognize that § 6802(e)(8)'s judicial-process exception permits disclosure in civil discovery.

In *Marks v. Global Mortgage Group, Inc.*, the defendant bank made essentially the same argument EMC makes here: that the GLBA prohibited production of nonpublic personal financial information belonging to other customers. 218 F.R.D. 492, 494–95 (S.D.W. Va. 2003). The Court rejected that argument and held that 15 U.S.C. § 6802(e)(8) permits a financial institution to disclose the non-public personal financial information of its customers to comply with a discovery request. *Id.* at 496. The Court explained that the phrase "to respond to judicial process" is "syntactically separate and distinct" from the statute's separate exception for disclosures to government regulators and therefore constitutes "an independent 'judicial process' exception" applicable to civil discovery. *Id.* It further held that "[w]hen a party must disclose information pursuant to a discovery request, the party is responding to judicial process." *Id.* Thus, "under the judicial process exception, the defendant may disclose its customers' nonpublic personal information in response to the plaintiffs' discovery request." *Id.*

*Marks* also rejected the broader premise that a statutory confidentiality obligation creates an evidentiary privilege. The Court explained that "the mere fact that a statute generally prohibits the disclosure of certain information does not give parties to a civil dispute the right to circumvent the discovery process." *Id.* at 496–97. Because the GLBA "does not clearly prohibit the disclosure of information for discovery purposes" and instead "permits disclosures made to respond to

judicial process," the court held that "the Federal Rules of Civil Procedure govern the disclosure of information protected by the Act." *Id.* at 497. The court affirmed an order compelling production of other borrowers' loan information subject to a protective order. *Id.* at 494–97.

A Pennsylvania court has reached the same conclusion. In *D E & S Properties, Inc. v. Zeltser*, Bank of America argued that the GLBA prohibited disclosure of a nonparty borrower's personal financial information and effectively created a statutory privilege between financial institutions and their customers. No. 1300 CV 2010, 2011 Pa. Dist. & Cnty. Dec. LEXIS 80, at *5–9 (Pa. Ct. Com. Pl. Monroe Cnty. May 2, 2011). Relying in part on *Marks*, the Court recognized the "growing trend in the state and federal courts toward extending the GLBA 'judicial process' exception to discovery in civil litigation." *Id.* at *7–8. It held that the requested discovery fell within § 6802(e)(8)'s judicial-process exception and ordered the bank to answer the relevant discovery. *Id.* at *8–11. Although the information there included the personal and financial information of a specific nonparty borrower, the court did not permit the GLBA to operate as a bar to discovery; it instead directed that the information be submitted for in camera review so the court could determine what was relevant. *Id.* at *11.

These authorities foreclose EMC's suggestion that complying with Plaintiff's discovery requests would place it in violation of the GLBA. The statute permits disclosure through judicial process, and the Federal Rules—not a nonexistent GLBA privilege—govern whether the information is discoverable. The requested information is also substantially less intrusive than the records compelled in *Marks* and *D E & S Properties*. Plaintiff does not seek consumers' loan files, account histories, or financial records. He seeks complaints about allegedly unlawful or unauthorized telemarketing, EMC's responses, and related nonprivileged communications.

## V. EMC PROVIDES NO EVIDENCE OF UNDUE BURDEN

EMC labels the requests "overbroad," "voluminous," and "burdensome," but provides no evidence supporting those characterizations. It does not submit a declaration identifying the custodians, databases, or document repositories that would need to be searched. It provides no estimate of the number of responsive complaints, employee hours, cost, or time required. It does not describe any search it performed or explain why complaints, litigation, arbitrations, or do-not-call requests would be difficult to locate.

A party resisting relevant discovery on undue-burden grounds must substantiate the asserted burden with specific evidence. *Gabe Staino Motors, Inc. v. Volkswagen of America, Inc.*, No. 99-5034, 2003 U.S. Dist. LEXIS 3194, at *9 (E.D. Pa. Feb. 28, 2003) (Merely asserting that a party will suffer an undue burden without specific estimates of staff hours needed to comply will be categorically rejected.).

The contrast with *Perrong v. Victory Phones, LLC*, No. 20-cv-5317, ECF No. 68 (E.D. Pa. Apr. 5, 2022), is instructive. There, the defendant submitted an affidavit estimating that production of classwide calling records would cost approximately $43,000. The Court nevertheless compelled production because the records were relevant and proportional to class certification. Here, EMC supplies no declaration, affidavit, estimate, or other evidence at all. EMC's Opposition instead says that compliance would require it "to first review and analyze all internal records for anything that may be responsive." Opp. at 1. Conducting a reasonable search is not an undue burden; it is the ordinary obligation of a party responding to discovery.

Nor may EMC refuse to produce anything merely because it believes some portion of the requests may be overbroad. Rule 34 requires a responding party to state whether responsive materials are being withheld and to produce documents within any unobjectionable portion of a

request. Fed. R. Civ. P. 34(b)(2)(C). EMC instead asserted boilerplate objections and produced nothing.

EMC's temporal objection is contradicted by the discovery requests themselves. The Definitions provide that, "[u]nless otherwise indicated, these requests shall pertain to the time period starting four years before the filing of the original complaint in this case and continuing through the present." Interrogatory No. 16 and Request for Production No. 5 contain no different temporal limitation and therefore are both governed by that defined Relevant Time Period. EMC's assertion that the requests are "not reasonably limited in time" simply disregards the limitation applicable to the entire discovery set. Moreover, the four-year period corresponds to the TCPA's limitations period and is reasonably tailored to identifying complaints, notice, and similar conduct relevant to the claims and defenses in this action. EMC's temporal objection therefore supplies no basis—much less a proportional one—for withholding all responsive information and documents.

## VI. EMC's Blanket Privilege Objection Does Not Excuse Its Failure to Respond

EMC asserts that responsive materials "would necessarily involve privileged information." Opp. at 3. That assertion is incorrect.

Complaints submitted by consumers, demand letters received from third parties, filed pleadings, arbitration demands, do-not-call requests, and ordinary-course business records are not privileged merely because they concern possible legal violations. Nor does a document become privileged merely because counsel later received or reviewed it. EMC's operational investigations and ordinary-course responses to consumer complaints are likewise not automatically protected work product. To the extent EMC withholds a particular responsive document because it contains privileged legal advice or was prepared in anticipation of litigation, Rule 26(b)(5)(A) requires

EMC to identify and describe the withheld document sufficiently to permit assessment of the claim. EMC has not identified a single document, described any allegedly privileged category, or supplied a privilege log.

*Hoy* addressed this precise issue in ruling on the materially identical document request. The Court held that "'complaints' would encompass a direct communication from an individual, even if no private lawyer or governmental agency was involved, responses, and related internal communications." *Hoy v. Medicare Health Advisors LLC*, No. 4:25-cv-00207-RGE-HCA, 2026 U.S. Dist. LEXIS 142853, at *3–4 (S.D. Iowa Feb. 17, 2026). It therefore ordered production of individual complaints, the defendant's responses, and "related non-privileged internal communications." *Id.* at *4–5. The Court separately directed that, "[t]o the extent that MHA withholds any responsive documents based on privilege, MHA shall prepare a privilege log and produce a copy of the log." *Id.* at *5. That is the appropriate result here. The possibility that some responsive communications may contain privileged material requires EMC to produce the nonprivileged materials and log the particular documents withheld, it does not permit EMC to withhold every complaint, every response, and every related communication.

## CONCLUSION

EMC's Opposition does not dispute that consumer complaints can reveal whether EMC knew its telemarketing practices were producing unauthorized or wrong-number calls, whether Plaintiff's experience was truly isolated, or whether EMC's defenses concerning typicality have a factual basis. Instead, EMC mischaracterizes the requests as an attempt to obtain putative class members' identities, even though Plaintiff does not seek their account information and similar personal information.

The authorities EMC invokes do not support wholesale nonproduction. *Morrison* holds that legitimate confidentiality concerns should be addressed through a protective order. The GLBA expressly permits disclosure in response to judicial process, and *Marks* and confirm that the Act creates no privilege against civil discovery. *Hoy*, addressing materially identical request language, ordered production of complaints, responses, related nonprivileged internal communications, do-not-call records, and a privilege log. Unlike the request narrowed in *Hoy*, both requests here are already limited to the defined Relevant Time Period. EMC has also offered no evidence substantiating its claimed burden and has identified no particular document supporting its blanket privilege objection.

Plaintiff therefore respectfully requests that the Court order EMC to conduct a reasonable inquiry and search; provide a complete, verified response to Interrogatory No. 16; produce all nonprivileged documents responsive to Request for Production No. 5 during the Relevant Time Period, subject to appropriate confidentiality protections; and produce a privilege log identifying any responsive document actually withheld. If no responsive information or documents exist, EMC should be required to state that fact unequivocally under verification.

Dated: September 21, 2026

Respectfully Submitted,

/s/ Anthony Paronich

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com